# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**GULF OFFSHORE LOGISTICS, L.L.C., et al.**                    **CIVIL ACTION**

**VERSUS**                                                                    **NO. 11-1788**

**SEIRAN EXPLORATION & PRODUCTION**                 **SECTION: "G"(2)**
**COMPANY, L.L.C., et al.**

## ORDER AND REASONS

        In this litigation, Plaintiffs Gulf Offshore Logistics, LLC and JNB Operating, LLC (collectively, "Plaintiffs") allege that the defendants are in default for nonpayment of marine services in the amount of $1,895,079.65. Before the Court is Intervenor Offshore Liftboats, LLC's ("Offshore Liftboats") "Motion to Reconsider Order."[1] In the pending motion, Offshore Liftboats requests that the Court reconsider its April 15, 2013 Order, which stayed and administratively closed the above-captioned matter in light of pending bankruptcy proceedings involving various defendants.[2] Having considered the pending motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

**A.      Factual Background**

        Plaintiffs in this matter are Gulf Offshore Logistics, LLC ("GOL") and JNB Operating, LLC (JNB").[3] According to the Original Complaint, GOL is a "major broker, agent, and charterer of

---

[1]  Rec. Doc. 64.

[2]  *See* Rec. Doc. 63.

[3]  *See* Rec. Doc. 3. The original complaint, filed on July 24, 2011, named GOL and Galiano Tugs, Inc. as plaintiffs in this matter. *See* Rec. Doc. 1.  However, the first amended complaint, filed on July 27, 2011, substituted JNB as party plaintiff for and instead of Galiano Tugs, Inc. *See* Rec. Doc. 3 at ¶ 2.

vessels, barges and other marine equipment and services to the marine industry."[4] Defendants are Seiran Exploration & Production Company, LLC ("Seiran"), Great Gulfcan Energy Texas Inc., Great Gulfcan HI55L, LLC, Great Gulfcan HI98L, LLC, CIMA Energy Minerals, Ltd., Petrohawk Energy Corporation, Noble Energy, Inc., Berkley Petroleum Corporation, Devon Energy Production Company, LP, and Stratco Operating Company, Inc.[5] Defendant Seiran is engaged in offshore drilling and exploration operations in the Gulf of Mexico.[6][7]

On November 8, 2010, GOL entered into a written charter agreement with Seiran (the "GOL-Seiran Charter"), to provide vessels, barges, and marine services to Seiran and its successors, partners, and lease owners.[8] The Complaint alleges that "[p]ursuant to the aforesaid charter agreement with Seiran, GOL charted various vessels, and barges to Seiran, and supplied provisions, fuel, cordage, operating crew personnel, repairs, and other marine services and necessities to Serian . . . ."[9] Additionally, "[s]ubsequent to the aforesaid Charter, marine transportation services, provisions, supplies, fuel, crew, repairs, dispatch standby services, and marine cargo services . . . were provided at Seiran's and its successors' requests, to various chartered vessels in marine navigation and transport within the Gulf of Mexico and at the locations of Seiran's drilling and exploration operations in U.S. and International Waters, principally High Island 98-L and High

---

[4]  Rec. Doc. 1 at ¶ 3.

[5]  *Id.* at ¶ 2.

[6]  *Id.* at ¶ 3.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.*

Island 55-L . . . ."[10] According to the Complaint, "Defendant Seiran, its successors, partners, lease owners, joint exploration, and production interests are in default for nonpayment of marine services provided pursuant to the GOL-Seiran charter in the total amount of $1,895,079.65, which amount is increasing due to Plaintiffs' attempt to mitigate damages by continuing to provide some marine services to the Defendants' Gulf of Mexico operation to prevent total collapse of the project."[11]

## B.    Procedural Background

Plaintiffs filed the Original Complaint on July 24, 2011,[12] and the First Amended Complaint on July 27, 2011.[13]

On September 8, 2011, Offshore Liftboats filed a Complaint for Intervention.[14] In its Complaint for Intervention, Offshore Liftboats claims that "[p]ursuant to the Serian-GOL Blanket Time Charter, GOL entered into a sub-contract with Offshore Liftboats ["GOL-Offshore Liftboats Agreement"] on November 25, 2009. . . ."[15] Pursuant to the sub-contract, Offshore Liftboats allegedly "furnished materials, supplies, vessels, equipment, and/or performed labor and services on High Island State Tract 98-L Well No. 10 . . . and the State Tract 98-L Well No. 11 . . . from

_____

[10] *Id.*

[11] *Id.* at ¶ 4.

[12] Rec. Doc. 1.

[13] Rec. Doc. 3.

[14] Rec. Doc. 23.

[15] *Id.* at ¶ 3. It appears that "2009" may represent a typographical error as the GOL-Seiran Charter was dated November 8, 2010.

3

approximately February 16, 2011 to April 14, 2011." According to Offshore Liftboats, $778,645.00 is due "by GOL to Offshore Liftboats."[16]

On December 8, 2011, the above-captioned matter was placed on the Court's call docket for February 1, 2012.[17]

On January 18, 2012, Defendants Seiran, Great Gulfcan Energy Texas Inc., Great Gulfcan HI55L, LLC, and Great Gulfcan HI98L, LLC filed a "Notice of Entry of Order for Relief and of Automatic Stay," wherein the parties represented that they had filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.[18]

Following various motions by Plaintiffs, the call docket was continued to August 1, 2012.[19] On August 1, 2012, counsel for Plaintiffs appeared before the Court to show cause why the case should not be dismissed for failure to prosecute.[20] The Court ordered that the case be administratively closed for six months, and instructed that the Court would dismiss without prejudice at that time if the case were not reopened by any party.[21]

On January 8, 2013, Offshore Liftboats filed a Motion to Reopen Case, wherein it requested "that the Court reopen this case so that [Offshore Liftboats] might seek leave to file a Cross Claim

---

[16] *Id.* at ¶ 5.

[17] Rec. Doc. 37.

[18] Rec. Doc. 38.

[19] *See* Rec. Doc. 40; Rec. Doc. 44; Rec. Doc. 46.

[20] Rec. Doc. 47.

[21] *Id.*

against plaintiff, Gulf Offshore Logistics, LLC."[22] The Court denied the motion on January 9, 2013, ordering that Offshore Litfboats "provide briefing whether reopening this matter is inconsistent with any bankruptcy stay."[23]

On January 28, 2013, Offshore Liftboats reurged its Motion to Reopen Case," asserting that under the Fifth Circuit's decision in *Sosbee v. Steadfast Insurance Company*,[24] "[t]he automatic stay does not generally apply to third parties."[25] The Court set the motion for submission on February 8, 2014, and ordered that any opposition be filed by February 4, 2013.[26] On February 8, 2013, with no opposition having been filed, the Court granted the motion.[27]

On March 21, 2013, Offshore Liftboats filed a "Motion for Leave to File Crossclaim."[28] In its proposed crossclaim, Offshore Liftboats contends that GOL breached GOL-Offshore Liftboats Agreement, which provided that GOL "will use reasonable efforts to obtain from the Charterer provisions for payment within a reasonable time" and that GOL "agrees to undertake all reasonable efforts to collect charter hire from Charterer."[29]

---

[22] Rec. Doc. 49.

[23] Rec. Doc. 50.

[24] 701 F.3d 1012 (5th Cir. 2012).

[25] Rec. Doc. 51 at p. 2.

[26] Rec. Doc. 53.

[27] Rec. Doc. 54.

[28] Rec. Doc. 58.

[29] Rec. Doc. 58-6 at ¶ 6, 14.

A status conference was held on April 2, 2013, [30] at which "the Court informed the parties that it will not take further action in this case, including ruling on Offshore Lifeboats, L.L.C., motion for leave to file a cross claim, until the parties have requested and received a lift of the bankruptcy stay."[31] On April 15, 2013, the Court ordered the matter "stayed and administratively closed until the parties have received and filed into the record a lift of the automatic stay from the bankruptcy court."[32]

On May 1, 2013, Offshore Liftboats filed the pending "Motion to Reconsider Order."[33] On May 6, 2013, GOL filed a memorandum in opposition.[34] With leave of the Court, Offshore Liftboats filed a reply on May 22, 2013.[35]

On March 24, 2014, the Court ordered that Offshore Liftboats and GOL provide further briefing addressing the status of bankruptcy proceedings.[36] GOL filed a memorandum on April 2, 2014, and Offshore Liftboats filed a memorandum on April 7, 2014.[37]

---

[30] Rec. Doc. 62.

[31] *Id.*

[32] Rec. Doc. 63.

[33] Rec. Doc. 64.

[34] Rec. Doc. 65.

[35] Rec. Doc. 68.

[36] Rec. Doc. 72.

[37] Rec. Doc. 73.

## II. Parties' Arguments

**A.     Offshore Liftboats' Arguments in Support**

Offshore Liftboats contends that the Court should lift the stay of this case to allow Offshore Liftboats to pursue its cross-claim against GOL. In support of its position, Offshore Liftboats avers that "[t]his Court has already found that the bankruptcy stay does not apply to GOL as it is not a debtor in the related bankruptcy action."[38] Thus, Offshore Liftboats maintains that "should Offshore Liftboats move the Texas bankruptcy court to lift the stay, it would unnecessarily incur costs and expenses for traveling to Texas to appear before the bankruptcy court."[39] Offshore Liftboats "requests that this Honorable Court grant its instant Motion and alter or amend its Order by deleting any provision staying and administratively closing this case until the parties have received and filed into the record a lift of the automatic stay from the bankruptcy court."[40] Additionally, Offshore Liftboats  requests that the Court "grant its Motion for Leave to file its Cross Claim against GOL and alter or amend the subject Order to note the same."[41]

**B.     GOL's Arguments in Opposition**

In opposition to Offshore Liftboats' motion, GOL points to § 362(a) of the Bankruptcy Code, which provides that the filing of a bankruptcy proceeds stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement

---

[38] Rec. Doc. 64-1 at p. 4.

[39] *Id.*

[40] *Id.*

[41] *Id.* at p. 5.

of the case under this title, or to recover a claim against the debtor that arose before the commencement of the cause under this title," and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[42] According to GOL, in its proposed cross-claim, Offshore Liftboats "argues that GOL is in breach of its contractual duties to collect charter hire from the bankrupt Seiran Exploration & Production Company, L.L.C."[43] GOL reasons that permitting this cross-claim would violate the automatic bankruptcy stay:

> As noted above, Section 362 prohibits GOL from attempting to obtain Seiran's property, collecting a prior claim, or otherwise pursuing Seiran except within the perameters [sic.] of the bankruptcy. Accordingly, in January 2012, GOL engaged Gardere & Wynne's Houston office to serve as bankruptcy counsel in connection with the bankruptcy proceedings of Seiran and its affiliates and to protect the rights of GOL and its contract operators within the bankruptcy. Intervenor is in effect arguing that by not violating the automatic stay and taking a more aggressive position against Seiran, GOL is in breach of its contractual duties to Intervenor.[44]

GOL additionally asserts that "[t]he contract between GOL and Intervenor quoted in Intervenor's Memorandum of March 21, 2013, specifically provides that '**under no circumstances** shall Broker (GOL) be responsible to Operator (Intervenor) for the Charterer's (Seiran's) non-payment of charter hire.'"[45] According to GOL, because the contract states that GOL is not responsible for Seiran's failure to pay, "Intervenor is attempting to do indirectly, by attacking GOL, what it cannot

---

[42]  Rec. Doc. 65 at pp. 1–2 (quoting 11 U.S.C. § 362(a)(1), (3)).

[43]  *Id.* at p. 2.

[44]  *Id.*

[45]  *Id.* (emphasis in original).

do directly, *i.e.* obtain payment from Seiran, when Intervenor is aware that its claim is really against the bankrupt estate."[46]

GOL notes that in its January 28, 2013 "Motion to Reopen Case," Offshore Liftboats cited *Sosebee v. Steadfast Insurance Co.*, 701 F.3d 1012 (5th Cir. 2012), "as authority for the premise that the automatic stay does not apply to third parties."[47] GOL urges that *Sosebee* "concerns the right to pursue insurance proceeds of a bankrupt assured under the Direct Action Statute and does not apply to the facts here."[48] According to GOL, "[a] long line of cases, however, has held that when the estate of the bankrupt is the real matter at issue in a dispute, or other unusual circumstances exist, extension of the automatic stay to the third party is in order."[49]

## C.     Offshore Liftboats' Arguments in Further Support

In its reply memorandum, Offshore Liftboats contends that "GOL has failed to provide any controlling legal authorities which indicate that the bankruptcy stay prohibits Offshore Liftboats from pursuing its claims against GOL."[50] According to Offshore Liftboats, "*In Re S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.*, is not on point as the issue there was whether the automatic stay provision of the 'Bankruptcy Code.' 11 U.S.C. § 362, applies to claims against a non-bankrupt defendant in a state court action related to certain bankruptcy proceedings, where the bankrupt debtor and the non-bankrupt defendant were considered one entity or having a unitary interest."[51]

---

[46]  *Id.* at pp. 2–3.

[47]  *Id.* at p. 3.

[48]  *Id.*

[49]  *Id.* (citing *In the Matter of S.I. Acquisition*, 817 F.2d 1142 (5th Cir. 1987)).

[50]  Rec. Doc. 68 at p. 2.

[51]  *Id.*

Offshore Liftboats avers that in this the above-captioned matter, "neither Offshore Liftboats nor any other party has alleged that GOL is unified or in any way related to the bankrupt defendants."[52]

Furthermore, Offshore Liftboats maintains that "[t]he section of the U.S. Code discussing the scope of the automatic stay resulting from a bankruptcy filing could not be clearer in conveying that the automatic stay only applies to the bankrupt debtors and their property."[53] According to Offshore Liftboats, "[a]s is readily apparent from Offshore Liftboats' claims in its proposed Cross Claim, Offshore Liftboats only seeks damages from GOL for its breach of the Offshore-GOL Brokerage Agreement. Any damages that GOL may be liable to pay Offshore Liftboats as a result of the allegations in Offshore Liftboats' Cross Claim would not be the responsibility of the bankrupt defendants but would solely be the responsibility of GOL."[54]

Finally, Offshore Liftboats contends that "GOL has waived any rights it might have to oppose the instant Motion."[55] Offshore Liftboats explains:

> Subsequent to Offshore Liftboats filing its motion seeking to reurge its *Ex Parte* Motion to reopen this case so that it might pursue claims against GOL, the Court ordered that oppositions to same be filed by February 4, 2013. After receiving no opposition from any party, let alone GOL, this Court granted Offshore Liftboats' *Ex Parte* Motion to reopen the case so that it might pursue claims against GOL. Moreover, the record will reflect that Offshore Liftboats' Motion for Leave to file its Cross Claim against GOL went unopposed by all parties.[56]

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at pp. 3–4.

[55] *Id.*

[56] *Id.* at p. 4.

**D.      GOL's Supplemental Briefing**

On April 2, 2014, GOL filed an additional memorandum in response to the Court's order for supplemental briefing.[57] In its memorandum, GOL asserts that "[t]he bankruptcy proceedings filed by Defendants, Seiran Exploration & Production Company, L.L.C. ("Seiran") and its affiliates, remain open except for the proceeding filed by Defendant, Great Gulfcan HI55L, LLC, which was closed by the United States Bankruptcy Court, Southern District of Texas . . . ."[58] GOL reiterates that the Court's stay should remain in effect.[59]

**E.      Offshore Liftboats' Supplemental Briefing**

On April 7, 2014, Offshore Liftboats filed an additional memorandum in response to the Court's order for supplemental briefing.[60] In its memorandum, Offshore Liftboats confirms that the stay remains in effect with respect to all debtors, except Great Gulfan HI55L.[61] Offshore Liftboats reasserts its position that GOL "is not a debtor in the Texas bankruptcy action" and Offshore Liftboats "should not be required to move the Bankruptcy Court to lift the stay since the stay does not apply to GOL."[62]

---

[57]  Rec. Doc. 72.

[58]  *Id.* at pp. 1–2.

[59]  *Id.* at pp. 2–3.

[60]  Rec. Doc. 73.

[61]  *Id.* at p. 1.

[62]  *Id.*

## III. Law and Analysis

**A.     Standard on Motion for Reconsideration**

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[63] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[64]  When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[65]

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient"[66] However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[67]

The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e)

---

[63]   *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[64]   *Id*. (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at **3–4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[65]   Fed. R. Civ. Pro. R. 54(b).

[66]   *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[67]   *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993); 18B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2002)

motions to alter or amend a final judgment.[68] Such a motion "calls into question the correctness of a judgment,"[69] and courts have considerable discretion in deciding whether to grant such a motion.[70] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[71]  Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1)   the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)   the movant presents newly discovered or previously unavailable evidence;

(3)   the motion is necessary in order to prevent manifest injustice; or

(4)   the motion is justified by an intervening change in controlling law.[72]

A motion for reconsideration "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[73]  Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[74]  "It is well

---

[68]   *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[69]   *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).

[70]   *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[71]   *Id.* at 355–56.

[72]   *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[73]   *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[74]   *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

settled that motions for reconsideration should not be used . . . to re-urge matters that have already

been advanced by a party."[75]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment

after its entry is an extraordinary remedy that should be used sparingly"[76] and the motion must

"clearly establish" that reconsideration is warranted.[77] When there exists no independent reason for

reconsideration other than mere disagreement with a prior order, reconsideration is a waste of

judicial time and resources and should not be granted.[78]

**B.    Automatic Bankruptcy Stay**

Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, imposes an automatic stay of any

judicial proceeding against a defendant who files for bankruptcy. In pertinent part, the statute

provides:

> Except as provided in subsection (b) of this section, a petition filed under sections
> 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the
> Securities Investor Protection Act of 1970, operates as a stay, applicable to all
> entities, of—
>
> (1)    the commencement or continuation, including the issuance or employment
> of process, of a judicial, administrative, or other action or proceeding against
> the debtor that was or could have been commenced before the
> commencement of the case under this title, or to recover a claim against the
> debtor that arose before the commencement of the case under this title . . .

---

[75] *Helena Labs Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[76] *Templet*, 367 F.3d at 478–79 (citation omitted).

[77] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[78] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002); *see also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

(3)     any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .[79]

As the Fifth Circuit, citing the legislative history of section 362(a), has explained, the automatic stay provision is a key component of federal bankruptcy law:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly [reorganization or] liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.[80]

In this manner, the automatic stay "ensures a respite for the debtor so that it may attempt to reorganize or decide to liquidate and promotes the overriding bankruptcy policy of equal distribution of a debtor's asserts among creditors."[81]

## C.     Automatic Bankruptcy Stay under Section 362(a)(1)

As noted above, Section 362(a)(1) provides for an automatic stay of any "judicial . . . proceeding against the debtor." The general rule is that the Section 362(a)(1) stay is only applicable to the defendant in bankruptcy and not to any non-bankrupt co-defendants or third parties.[82] Courts

---

[79]  11 U.S.C. § 362(a)(1), (3).

[80]  *In the Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) (citing H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 340 (1978)).

[81]  *Id.*

[82]  *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors."); *see also S.I. Acquisition*, 817 F.2d at 1147 ("[A] section 362(a)(1) stay is available for the debtor's benefit and does not prohibit actions against nonbankrupt third parties or codefendants.").

have recognized, however, limited situations where the 362(a)(1) stay may apply against non-debtors. In *Arnold v. Garlock, Inc.*, the Fifth Circuit explained:

> By exception, a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.[83]

However, this exception does not apply where there is "no claim of a formal tie or contractual indemnification had been made to create an identity of interests between the debtor and the nondebtor."[84]

In the above-captioned matter, there is no claim that GOL has any formal tie to the debtors or that any contractual indemnification exists. Accordingly, Offshore Liftboats' claim against GOL is not automatically stayed pursuant to Section 362(a)(1).

## D.    Automatic Bankruptcy Stay under Section 362(a)(3)

Turning to Section 362(a)(3), that provision states that the filing of a bankruptcy petition automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Fifth Circuit noted in *In the Matter of S.I. Acquisition, Inc.* that this provision "thus implements a stay of any action *whether against the debtor or third parties*, that seeks to obtain or exercise control over the property of the debtor."[85] Further, the Fifth Circuit explained that "the term 'all legal and equitable interests of the debtor in

---

[83] *Arnold*, 278 F.3d at 436; *see also Reliant Energy Serv., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("[A] bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.").

[84] *Reliant Energy Serv.*, 349 F.3d at 825 (citing *Arnold*).

[85] *S.I. Acquisition, Inc.*, 817 F.2d at 1148 (emphasis added).

property' is all-encompassing and includes rights of action as bestowed by either federal or state law."[86] In light of these principles, *S.I. Acquisition* sets forth a disjunctive test for determining whether the filing of a bankruptcy petition stays an action against a third party under Section 362(a)(3):

> (1)  the automatic stay applies to a cause of action that under state (or federal) law belongs to the debtor; or
>
> (2)  the automatic stay applies to a cause of action that seeks to recover property of the estate when the property is held or controlled by a person or entity other than the debtor; and
>
> (3)  in applying the above rules, a court must keep in mind the general bankruptcy policies of securing and preserving the debtor's property and ensuring equal distribution of the debtor's assets to similarly-situated creditors.[87]

### 1.    Whether Offshore Liftboats' Cause of Action Belongs to the Debtors

With respect to the first prong, "[w]hether a particular claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case."[88] In making this determination, the court "look[s] to the nature of the injury for which relief is sought and consider[s] the relationship between the debtor and the injury."[89] A cause of action belongs to the estate if it "alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its

---

[86]  *Id.* (citing *In re MortgageAmerica*, 714 F.2d 1266, 1274 (5th Cir. 1983)).

[87]  *In re Schimmelpenninck*, 183 F.3d 347, 355 (5th Cir. 1999) (summarizing *S.I. Acquisition*); *see also S.I. Acquisition, Inc.*, 817 F.2d at 1150.

[88]  *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (citing *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)).

[89]  *Id.*

direct injury under the applicable law."[90] Conversely, the action does not belong to the estate if it "does not explicitly or implicitly allege harm to the estate."

In the above-captioned matter, Offshore Liftboats alleges GOL breached the Offshore-GOL Agreement by not "us[ing] reasonable efforts to obtain from the Charterer provisions for payment within a reasonable time" and that GOL did not "undertake all reasonable efforts to collect charter hire from Charterer."[91] The alleged harm in this case is Offshore Liftboats' not receiving charter hire from services provided to Seiran and the other debtors. This cause of action alleges direct—rather than indirect—harm to Offshore Liftboats, and no harm to Seiran and the other debtors. Accordingly, Offshore Liftboat's cause of action against GOL does not belong to the bankruptcy debtors, and is not enjoined under prong one of the *S.I. Acquisition* test.

### 2. Whether Offshore Liftboats' Cause of Action Seeks to Recover Property of the Bankruptcy Estate When the Property Is Held or Controlled by a Person or Entity Other Than the Debtor

In *In re Schimmelpenninck*, the Fifth Circuit addressed the second prong of the *S.I. Acquisition* test.[92] Explaining that the policy motivation for the automatic stay is "securing and preserving the debtor's property and ensuring equal distribution of that property to similarly situated creditors,"[93] the court observed that "[a]s not all claims 'belong to' the debtor—because either by statute or common law the debtor is precluded from asserting the action—another mechanism must exist to prevent individual creditors from annexing assets of the estate to gain an advantage."[94]

---

[90] *Id.* (quoting *Educators Group Health Trust*, 25 F.3d at 1284).

[91] Rec. Doc. 58-6 at ¶ 6, 14.

[92] *Schimmelpenninck*, 183 F.3d at 358–61.

[93] *Id.* at 359.

[94] *Id.* at 360.

Otherwise, the absence of a stay would work to the detriment of "the collective benefit of creditors."[95]

In light of these considerations, the Fifth Circuit held that Section 362(a)(3) reaches "[a]ctions by individual creditors" that cannot be asserted by the debtor, but that nonetheless allege "a generalized injury to the debtor's estate."[96] In *Schimmelpenninck*, the court concluded that the alter ego claim of a creditor against the bankrupt debtor's subsidiary was one that alleged an injury to the debtor's estate because "[t]he relief sought by [the creditor," to pierce the corporate veil, "is common to all of the creditors."[97] The Fifth Circuit explained that if the bankrupt debtor and its subsidiary were treated as one entity, then "the assets and liabilities of the entities should be amalgamated for the benefit of all creditors, not [the creditor attempting to bring suit] alone."[98] The court accordingly held that the creditor had to be enjoined from prosecuting his alter ego claim.[99]

In this case, Offshore Liftboats' claim against GOL does not alleged a generalized injury to the bankrupt defendants' estate. Rather, Offshore Liftboats alleges that GOL breached its contract to Offshore Liftboats and should be held liable to Offshore Liftboats. Any liability by GOL to Offshore Liftboats would have no effect on the collective recovery of the bankrupt defendants' other creditors. Accordingly, Offshore Liftboats' cause of action does not seek to recover property of the

---

[95] *Id.* at 359.

[96] *Id.* at 360; *see also Seven Seas Petroleum*, 522 F.3d at 589 (quoting *Schimmelpenninck* for the proposition that "[i]t is '[a]ctions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors[,]' that can be said to raise a 'generalized grievance,' not actions by creditors that are merely common to a number of them.").

[97] *Id.* at 361.

[98] *Id.*

[99] *Id.*

bankruptcy estate when the property is held or controlled by a person or entity other than the debtor, and is not enjoined under prong two of the *S.I. Acquisition* test.

<u>**Conclusion**</u>

A motion for reconsideration should be granted if the motion is necessary to correct a manifest error of law or fact upon which the judgment is based.[100] In the above captioned matter, the Court initially ruled that it would not allow Offshore Liftboats to proceed with its cross-claim until the automatic bankruptcy stay had been lifted. Upon reconsideration of the Fifth Circuit caselaw addressing Section 362(a), particularly *S.I. Acquitions* and *Schimmelpennick*, it appears that Offshore Liftboats should be allowed to proceed with its cross-claim. Section 362(a)(1) does not stay Offshore Liftboats' cross-claim as there is no allegation that GOL has any formal tie to the debtors or that any contractual indemnification exists. Further, Section 362(a)(3) does not stay the cross-claim because Offshore Liftboats' cause of action neither belongs to the debtors nor seeks to recover property of the bankruptcy estate that is held or controlled by another entity.

The Court notes GOL's arguments that Offshore Liftboats' cross-claim "in effect argu[es] that by not violating the automatic stay and taking a more aggressive position against Seiran, GOL is in breach of its contractual duties to [Offshore Liftboats],"[101] and that the Offshore-GOL Agreement "provides that '**under no circumstances** shall Broker (GOL) be responsible to Operator (Intervenor) for the Charterer's (Seiran's) non-payment of charter hire.'"[102] However, these contentions go to the merits of Offshore Liftboats' claim—that is, whether GOL breached the

---

[100]   *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[101]   Rec. Doc. 65.

[102]   *Id.* (emphasis in original).

agreement—rather than whether Offshore Liftboats' claim is subject to the automatic stay. Considering the forgoing,

**IT IS HEREBY ORDERED** that Offshore Liftboats, LLC's "Motion to Reconsider Order"[103] is **GRANTED** and that the above-captioned matter is reopened to allow Offshore Liftboats, LLC to pursue its cross-claim against non-debtor Plaintiff Gulf Offshore Logistics, LLC;

**IT IS FURTHER ORDERED** that  Offshore Liftboats, LLC is granted leave to refile its "Motion for Leave to File Cross-Claim."[104]

**NEW ORLEANS, LOUISIANA**, this  28th day of May, 2014

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[103]  Rec. Doc. 64.

[104]  Originally filed at Rec. Doc. 58.