## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GULF OFFSHORE LOGISTICS, L.L.C., et al.**            **CIVIL ACTION**

**VERSUS**                                            **NO. 11-1788**

**SEIRAN EXPLORATION & PRODUCTION**                   **SECTION: "G"(2)**
**COMPANY, L.L.C., et al.**

### ORDER

Before the Court is Plaintiff Gulf Offshore Logistics, L.L.C.'s ("GOL") "Motion to Dismiss under FRCP Rule 12(b)(6) and/or FRCP Rule 56 Summary Judgment,"[1] wherein GOL moves to dismiss the cross-claim filed by intervenor Offshore Liftboats, L.L.C. ("Offshore"). Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion without prejudice to permit Offshore to take discovery in this matter.

### I. Background

GOL is a "major broker, agent, and charterer of vessels, barges and other marine equipment and services to the marine industry."[2]  According to Offshore's cross-claim, GOL entered into a contract with Defendant Seiran Exploration & Production Company, L.L.C. ("Seiran") on November 8, 2010 to charter vessels and provide other equipment for Seiran's offshore drilling and exploration operations in the Gulf of Mexico.[3] The cross-claim states that, pursuant to the GOL-Seiran agreement, GOL entered into a sub-contract (the "Brokerage Agreement") with Offshore on

---

[1] Rec. Doc. 80.

[2] Rec. Doc. 1 at ¶ 3.

[3] Rec. Doc. 79 at ¶ 4.

November 25, 2009[4] to "furnish[] materials, supplies, vessels, equipment, and/or performed labor and services" from approximately February 16, 2011 to April 14, 2011.[5] According to the cross-claim, the Brokerage Agreement provided that GOL, as "Broker," would undertake "all reasonable efforts" to collect charter payments from the "Operator," meaning Seiran, on Offshore's behalf.[6]

On July 24, 2011, GOL filed a lawsuit against Seiran, alleging nonpayment for marine services provided pursuant to the GOL-Seiran contract in the amount of at least $1,895,079.65.[7] On September 8, 2011, Offshore filed a complaint for intervention, wherein it alleges that, pursuant to its Brokerage Agreement with GOL, $778,645.00 is due "by GOL to Offshore Liftboats."[8]

On January 18, 2012, Seiran filed a "Notice of Entry of Order for Relief and of Automatic Stay,"[9] wherein it stated that it filed for bankruptcy on December 27, 2011 in the United States Bankruptcy Court for the Southern District of Texas.[10] Because filing for bankruptcy results in an automatic stay, the Court administratively closed the matter on August 9, 2012.[11] On January 8, 2013, Offshore filed an unopposed motion to reopen the case in order to pursue its cross-claim against GOL, which the Court granted on February 8, 2013.[12] On April 15, 2013, the Court again

---

[4] Neither party explains how Offshore and GOL were able to enter into a sub-contract in 2009, one year *before* the GOL-Seiran contract was effectuated.

[5] *Id.* at ¶ 5.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 4.

[8] *Id.* at ¶ 5.

[9] Rec. Doc. 38.

[10] *See* Case No. 11-40830 c/w 11-40829.

[11] Rec. Doc. 48.

[12] Rec. Doc. 54.

ordered that the matter is stayed and administratively closed until the parties file into the record a lift of the automatic stay from the bankruptcy court.[13] On May 28, 2014, the Court reopened the matter to allow Offshore to pursue its cross-claim against GOL.[14]

Offshore filed its cross-claim against GOL on July 25, 2014, wherein it alleges that GOL has breached its "contractual duties" owed to Offshore because "[d]espite that the aforementioned bankruptcy actions remain in litigation, GOL has advised Offshore Liftboats that it will not pursue its claims against Seiran, *et al.*"[15]

GOL filed the pending motion to dismiss for failure to state a claim or, alternatively, for summary judgment on August 4, 2014.[16] Offshore filed a memorandum in opposition on August 14, 2014, and GOL filed a memorandum in reply on August 18, 2014.[17]

## II. Parties' Arguments

**A.    *GOL's Arguments in Support of Dismissal***

GOL argues that Offshore has not and cannot state a viable claim against it because the Brokerage Agreement between the parties:

> clearly intends that as part of the consideration for receiving the benefits of GOL's efforts as Broker, Offshore Liftboats as Operator may not pursue GOL directly for the outstanding balances; cannot hold GOL responsible for the vagaries of collection efforts or collection litigation it pursues, in Offshore Liftboat's interest; and moreover, must defend, indemnify, and hold GOL harmless from any costs or expense, including attorney fees, which GOL may incur in executing its obligations under the agreement, including the costs and expense it, Offshore Liftboats, is

---

[13] Rec. Doc. 63.

[14] Rec. Doc. 74.

[15] Rec. Doc. 79 at p. 4.

[16] Rec. Doc. 80.

[17] Rec. Doc. 83.

responsible for imposing on GOL.[18]

Accordingly, it appears to be GOL's position that it is entitled to judgment as a matter of law because the Brokerage Agreement prohibits Offshore from seeking payment on outstanding balances from GOL directly.

**B.      *Offshore's Arguments in Opposition***

Offshore avers that "GOL presents to the Court matters outside [Offshore's] Cross Claim [sic]," and that, therefore, GOL's motion pursuant to Rule 12(b)(6) should be treated as a Rule 56 motion for summary judgment.[19] Offshore  next contends that the motion should be denied because the Brokerage Agreement contains a "pay-when-paid clause" which provides that Offshore will be paid by GOL after Seiran pays GOL, and that GOL "will take all reasonable efforts to collect the charter hire from Seiran."[20] Offshore argues that it "has no way of knowing whether GOL took all reasonable efforts to collect from Seiran and made all required payments to [Offshore] without being afforded the opportunity to engage GOL in discovery and explore whether payments GOL received from Seiran for the subject work were, in fact, paid to [Offshore]."[21] Therefore, according to Offshore, the pending motion is premature and should be denied.[22]

**C.      *GOL's Arguments in Further Support***

In response to Offshore's memorandum in opposition, GOL states, first, that Offshore admits that the relationship between the parties is governed by the November 25, 2009 Brokerage

---

[18] Rec. Doc. 80-2 at p. 10.

[19] Rec. Doc. 81 at p. 1.

[20] *Id.* at p. 2.

[21] *Id.*

[22] *Id.* at p. 3.

Agreement.[23] In response to Offshore's argument that the motion is premature, GOL argues that:

> GOL has informed OLB of and filed in the record of the Seiran bankruptcy proceeding proofs of claim covering OLB's interest, informed OLB of and filed in the records of Galveston and Jefferson Counties, Texas liens on Seiran's offshore leases as allowed by Texas law, has brought this suit in Louisiana, and has engaged Texas bankruptcy counsel, Gardere &Wynne, to represent the interests of GOL, OLB, and others in the Texas bankruptcy of Seiran. The fact remains, however, that no matter how many more "reasonable efforts" by GOL discovery might unearth, section 4(D) of the Brokerage Agreement provides that "[u]nder no circumstances shall Broker be responsible to Operator for the Charterer's non-payment of charter hire." To restate, under no circumstances shall GOL be responsible to OLB for Seiran's non-payment of charter hire.[24]

GOL next cites cases from the Second Circuit,[25] the Fifth Circuit,[26] and the Louisiana Supreme Court[27] to support its argument that if there is no persuasive basis for the court to conclude that further discovery would preclude summary judgment, it is unnecessary."[28] GOL avers that there is no genuine issue of material fact in this case because no party disputes the existence or effect of the Brokerage Agreement.[29] According to GOL:

> [n]o amount of discovery will change the agreement of the parties that GOL is not liable to [Offshore] for Seiran's non-payment, and GOL should not be forced to spend even more money to participate in [Offshore's] fishing expedition or to defend [Offshore's] cross-claim in light of the clear and unambiguous language of the

---

[23] Rec. Doc. 86 at p. 1.

[24] *Id.* at pp. 1–2.

[25] *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989); *Gualandi v. Adams*, 85 F.3d 236 (2d Cir. 2004)).

[26] *Id.* at p. 3 (citing *U.S. v. Bloom*, 112 F.3d 200 (5th Cir. 1997), *Ticknor v. Rouse's Enterprises, LLC*, 2 F.Supp.3d 882 (E.D. LA. 2014) (Morgan, J.)).

[27] *Simoneaux v. E.I. du Pont de Nemours and Co.*, 483 So.2d 908, 912-13 (La. 1986).

[28] Rec. Doc. 86 at pp. 2–4.

[29] *Id.* at p. 5.

5

contract between the parties.[30]

### III.   Law and Analysis

*A.*   ***Applicable Law***

As a threshold issue, the Court must determine whether to construe the pending motion as a motion to dismiss pursuant to Rule 12(b)(6) or a motion for summary judgment pursuant to Rule 56.  It is well-established that, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[31] There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[32]  "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[33] If, however, a district court considers other information outside the complaint,  it must treat the motion to dismiss as a motion for summary judgment.[34]  In the event a motion to dismiss is converted to one for summary judgment, a district court must first give the parties notice, and then may consider all evidence presented.[35]

In this case, Offshore contends that the motion must be construed as one for summary judgment because it presents "matters" outside the scope of the cross-claim; however, Offshore does

---

[30] *Id.*

[31] *Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009);  *Carter v. Target Corp.*, 541 Fed. Appx. 413, 416-17 (5th Cir. 2013).

[32] *Id; see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[33] *Carter*, 541 Fed. Appx. at 416.

[34] Fed. R. Civ. P. 12(d); *Rodriguez*, 310 Fed. Appx. at 626.

[35] *Id.*

not identify the "matters" to which it refers.[36] GOL attaches to its motion a copy of the Brokerage Agreement[37] and an affidavit by Todd Danos, the owner and operator of GOL.[38] The Court must therefore determine whether the submission of these exhibits falls within the recognized exception to the general rule that a district court may not "go outside the complaint" on a motion to dismiss.[39]

First, the Court may consider the Agreement because it was quoted at length in the cross-claim and is central to Offshore's only claim of breach of contract. Moreover, Offshore attached the entire Agreement as "Exhibit A" to its cross-claim.[40] The Court notes, further, that neither party disputes the authenticity or substantive validity of the Agreement.[41] Accordingly, it is properly before the Court at this time. The affidavit, however, is neither referred to in the cross-claim nor appears to be central to Offshore's claim, and therefore appears to be outside of the scope of the cross-claim.

Additionally, GOL's pending motion also sets forth factual arguments in an attempt to dispute the allegations in the complaint. For instance, GOL contends that it has undertaken "Herculean efforts to collect the outstanding balance through litigation and by claiming [sic] in the bankruptcy,"[42] including submitting all outstanding claims for Offshore to Seiran and retaining

---

[36] Rec. Doc. 81 at p. 1.

[37] Rec. Doc. 80-3

[38] Rec. Doc. 88. Danos' unsigned affidavit was originally attached to the pending motion as Rec. Doc. 80-2. On August 19, 2014 the Court granted GOL leave to substitute the signed affidavit for the unsigned version. *See* Rec. Doc. 87.

[39] *Id; see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[40] *See* Rec. Doc. 79 at pp. 2–3; Rec. Doc. 79-1.

[41] *See Borders v. Chase Home Fin. L.L.C.*, No. 09-3020, 2009 WL 1870916, at *5 (E.D. La. June 29, 2009) (Barbier, J.).

[42] Rec. Doc. 80-2 at p. 9.

bankruptcy counsel to actively pursue all claims in the proceedings.[43] GOL additionally states that it has already distributed to Offshore "all the funds previously collected on prior invoices," and argues that it should have no additional obligation to Offshore pursuant to the Agreement.[44] These factual arguments are not appropriate to consider on a motion to dismiss filed pursuant to Rule 12(b)(6), as the Court must take the allegations in the complaint as true.

As stated above, when matters outside the pleadings are considered, a Rule 12(b)(6) motion is converted into a motion for summary judgment. Here, considering that an affidavit and factual arguments have been submitted for the Court's consideration, the Court elects to construe the pending motion as one for summary judgment pursuant to Rule 56. In exercising this discretion, the Court notes that the parties agree that the Court may construe the motion as one for summary judgment.[45] Additionally, because the pending motion was brought as a "Motion to Dismiss Under FRCP Rule 12(b)(6) and/or FRCP Rule 56 Summary Judgment," both parties have been afforded sufficient notice that the Court might elect to decide the motion under Rule 56.

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or

---

[43] *Id.*

[44] *Id.* at pp. 4, 8–9.

[45] GOL seeks dismissal of the cross-claim pursuant to Rule 12(b)(6) or, alternatively, Rule 56. Offshore argues that the pending motion "should be treated as a Rule 56 Motion for Summary Judgment" and makes no argument with respect to Rule 12(b)(6). *See* Rec. Doc. 81 at p. 1.

[46] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

weighing the evidence."[47] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[48] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law."[49] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[50]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[51] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[52] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[53] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[54] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay

---

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[48] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[49] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[50] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[51] *Celotex*, 477 U.S. at 323.

[52] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied, 513 U.S. 871 (1994).

[53] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), citing *Anderson*, 477 U.S. 242 at 248-49.

[54] *Little*, 37 F.3d at 1075.

evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[55]

**B.      Analysis**

In seeking dismissal of the cross-claim, GOL argues that it has undertaken "reasonable efforts" to collect charter hire owed to Offshore by Seiran and that, in any event, the Brokerage Agreement provides that "[u]nder no circumstances shall Broker (GOL) be responsible to Operator (Offshore) for the Charterer's (Seiran's) non-payment of charter hire."[56] Offshore's sole argument in opposition is that it "has no way of knowing whether GOL took all reasonable efforts to collect from Seiran and made all required payments to [Offshore] without being afforded the opportunity to engage GOL in discovery and explore whether payments GOL received from Seiran for the subject work were, in fact, paid to [Offshore]."[57] Accordingly, it is Offshore's position that summary judgment is premature because "no discovery has taken place" with respect to its cross-claim against GOL.[58]

The Scheduling Order in this matter was issued on February 23, 2015 and provides that all discovery must be completed by September 16, 2015.[59] Considering that the Scheduling Order was only recently issued, and that Offshore represents that it needs to engage in discovery to ascertain "whether GOL took all reasonable efforts to collect from Seiran and made all required payments to

---

[55] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

[56] Rec. Doc. 86 at p. 2.

[57] Rec. Doc. 81 at p. 2.

[58] *Id.* at p. 3.

[59] Rec. Doc. 90.

[Offshore],"[60] the Court will deny the pending motion without prejudice. The Court notes that denial of the motion for summary judgment is appropriate for the additional reason that neither party has submitted a separate and concise statement of the material facts which they believe are uncontested or contested, as required under Local Rules 56.1 and 56.2.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Gulf Offshore Logistics, L.L.C.'s "Motion to Dismiss under FRCP Rule 12(b)(6) and/or FRCP Rule 56 Summary Judgment"[61] is **DENIED WITHOUT PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this <u>12th</u> day of March, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[60] Rec. Doc. 81 at p. 2. The Court notes that "what will constitute reasonable efforts under a contract expressly or impliedly calling for them is largely a question of fact, and entails a showing of activity reasonably calculated to obtain the results intended by the parties." Williston on Contracts § 63:15 (4th ed.).

[61] Rec. Doc. 80.